IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOY LUECK, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 10-CV-04025-JAR** |
| | ) | |
| CUSHING MEMORIAL HOSPITAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| **Defendant.** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## MEMORANDUM AND ORDER

Plaintiff Joy Lueck brings this action against her former employer, defendant Cushing Memorial Hospital Corp., alleging discrimination in violation of the Age Discrimination Employment Act of 1967 ("ADEA") and the Kansas Age Discrimination in Employment Act ("KADEA") and interference with her exercise of rights under the Family Medical Leave Act ("FMLA"). This case is now before the Court on Defendant's Motion for Summary Judgment (Doc. 27). The motion is fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court grants summary judgment.

## I.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact

---

[1]Fed. R. Civ. P. 56(a).

[2]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant must simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[3]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[10]

Summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[11]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[12]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[13]

## II.   Uncontroverted Facts

With the above rules of law and principles of application in mind, the following facts are uncontroverted, stipulated to, or viewed in the light most favorable to plaintiffs.

Plaintiff worked at will for defendant as a nurse from June 5, 1990, to August 29, 2008. During plaintiff's employment, she received numerous performance reviews.  In July of 2004 and 2005, September of 2006, and March of 2007 and 2008, plaintiff received generally a 4–5 rating out of 5 or "achieves expectations" on her performance reviews.

In June 2008, defendant granted plaintiff FMLA leave to recover from a knee replacement surgery.  No one at plaintiff's employment ever said anything to discourage plaintiff from exercising her FMLA rights before she went on leave.  While plaintiff was on leave, a co-worker, Barbara Collins, contacted her about returning to work.  Plaintiff's supervisor, April

---

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[12]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[13]*See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Pendleton, also contacted her to assess her condition and request that she return to work. Plaintiff told Ms. Pendleton that she did not feel well enough to do floor work but that she would return to work. Ms. Pendleton told plaintiff that she would not be assigned to work the floor but would need to assist a new nurse if she had questions. Ms. Pendleton also told plaintiff that she could return only if she obtained a full medical release from her physician. Plaintiff decided to obtain that release voluntarily. Effective August 17, 2008, plaintiff's physician released her to return to work without restriction. The physician did note, however, that plaintiff should remain sedentary when available. After returning to work, plaintiff did not request or expect additional FMLA leave.

Plaintiff returned to work on August 18, 2008, and helped orient Jackie Asherman, a registered nurse new to the area of the hospital where plaintiff worked. A few days after plaintiff began helping with Ms. Asherman's orientation, Ms. Asherman reported to Ms. Pendleton that plaintiff had told her to administer a "nurse's dose." Ms. Asherman understood administering a nurse's dose to mean giving medication outside of the range prescribed and documenting less. Ms. Pendleton shared Ms. Asherman's report with her supervisor, Susie Beying, defendant's Chief Nursing Officer. Ms. Pendleton never discussed the allegations with plaintiff.

On or about August 25, 2008, Ms. Beying and Director of Human Resources, Bertt Matthews, met with plaintiff to discuss Ms. Asherman's report. During the August 25, 2008 meeting, Ms. Beying asked plaintiff if she had nurse dosed or discussed nurse dosing with Ms. Asherman. Plaintiff responded that she had nurse dosed and had told Ms. Asherman to nurse dose. In the same meeting, plaintiff described nurse dosing as giving a little bit more. Plaintiff believed that nurse dosing meant giving a little bit more *within the range prescribed by the*

4

*attending physician*, or "range dosing," but she did not explain this understanding to anyone at the meeting on August 25, 2008.  At the August 25, 2008 meeting, Ms. Beying suspended plaintiff until August 29, 2008.  During her suspension plaintiff never told anyone at the hospital that in admitting to nurse dosing, she intended only to admit to range dosing.

On August 29, 2008, Ms. Beying and Mr. Matthews met with plaintiff again.  Ms. Beying informed plaintiff that they had decided to terminate her employment in light of her admission to nurse dosing.  No one at the hospital stated that age motivated their decision to fire plaintiff, but sometime before her termination, Ms. Pendleton asked plaintiff about her retirement plans in the course of a conversation.[14]

During the August 29, 2008 meeting, plaintiff never told anyone that in admitting to nurse dosing, she intended only to admit to range dosing.  After her termination plaintiff never told anyone at the hospital that in admitting to nurse dosing, she intended only to admit to range dosing.  No one at the hospital reported the nurse dosing incident to the Kansas State Board of Nursing.  No one at the hospital investigated the truth of Ms. Asherman's allegations any further.

Plaintiff agrees that as a nurse she did not have authorization to administer more medication than a physician prescribed and that doing so would justify the termination of her employment.  But before plaintiff's termination and sometime during her employment, she was a patient at defendant's hospital, and while being treated at the hospital, a younger nurse, Tabitha Forbach unintentionally overmedicated plaintiff; defendant did not terminate Ms. Forbach's

---

[14]Neither party included this fact in their uncontroverted facts section as required.  Each party, however, addressed it in their argument sections.  Although parties are required to set out all facts relied upon in a separately numbered section identifying them as material fact, *see* D. Kan. Local R. 56.1, the Court will consider this fact because, as described below, it does not change the Court's decision.

employment.[15]

At the time of plaintiff's termination, plaintiff was 63 years old.  After defendant terminated plaintiff, it hired two new night shift nurses.  In her deposition, Ms. Pendleton estimated that both of those nurses were younger than plaintiff.

## III.   Discussion

Plaintiff claims that defendant terminated her employment because of her age in violation of the ADEA and the KADEA.  Plaintiff further claims that defendant interfered with right to FMLA leave when its employees called her during her leave to request that she return to work.

### A.   ADEA and KADEA Claims

The ADEA makes it unlawful for an employer "to discharge any individual . . . because of such individual's age."[16]  The KADEA makes it unlawful for an employer "to bar or discharge the person from employment . . . because of age without a valid business motive."[17]  Courts use the same method to analyze KADEA and ADEA claims.[18]  To prevail on either age discrimination claim, a plaintiff must show that the employer used age as a determining factor in its adverse employment decision.[19]  A plaintiff need not show age as the sole determining factor

---

[15]Again neither party included these facts in their uncontroverted facts section, but both parties address them in their arguments section.  The Court will consider these facts because it does not change the outcome of the Court's decision.

[16]29 U.S.C. § 623(a)(1).

[17]K.S.A. § 44-1113.

[18]*Wallace v. Beech Aircraft Corp.*, 87 F. Supp. 2d 1138, 1147 (D. Kan. 2000) (citing *Elza v. Koch Indus., Inc.*, 16 F. Supp. 2d 1334, 1340 (D. Kan. 1998)).

[19]*Power v. Koss Constr. Co.*, 499 F. Supp. 2d 1194, 1201 (D. Kan. 2007) (citing *Green v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996)).

but must show that age made the difference in the decision.[20]  A plaintiff may meet this burden

by presenting direct evidence of age discrimination or by using indirect evidence under the

burden-shifting framework of *McDonnell Douglas Corp. v. Green*.[21]

### 1.      Direct Proof of Discrimination

Plaintiff claims that she has direct evidence of age discrimination.[22]  A plaintiff may

defeat summary judgment by using the direct method of proof to demonstrate that age played a

motivating role in the employer's adverse employment decision.[23]  A plaintiff can do this by

showing "an existing policy which itself constitutes discrimination"[24] or presenting "oral or

written statements on the part of the defendant showing a discriminatory motivation" directly

related to the adverse employment action.[25]  The Court, however, must distinguish between

statements establishing discriminatory animus in the decisionmaking process, which directly

prove discrimination, and "'stray remarks in the workplace, statements by nondecisionmakers, or

statements by decisionmakers unrelated to the decisional process,'" none of which directly prove

---

[20]*Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010) (citing *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir. 1985)).

[21]411 U.S. 792, 802–05 (1973).

[22]Plaintiff states that her direct evidence is minimal and that the Court should analyze this case under the *McDonnell Douglas* burden-shifting framework.  So despite labeling this evidence as direct evidence, plaintiff seems to treat the evidence as indirect evidence.  But because the plaintiff claims that she has some direct evidence, the Court first analyzes the whether plaintiff can prove discrimination under the direct method of proof—if plaintiff's evidence is direct evidence, minimal or otherwise, plaintiff defeats summary judgment and the *McDonnell Douglas* burden-shifting analysis is unnecessary.

[23]*Power*, 499 F. Supp. 2d at 1201.

[24]*Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

[25]*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

discrimination.[26]

Here, plaintiff only offers one statement as direct evidence of discriminatory animus in the decisionmaking process.  Plaintiff testified that her supervisor, Ms. Pendleton, asked plaintiff about her retirement plans.  Plaintiff also testified, however, that the question just came up in the course of a conversation.  And, plaintiff has offered no evidence that this comment related at all to the decisionmaking process.  Moreover, plaintiff has not provided any evidence that Ms. Pendleton participated in the decisionmaking process that led to plaintiff's termination.  While plaintiff states that Ms. Asherman reported to Ms. Pendleton that plaintiff instructed her to nurse dose, she also states that Ms. Pendleton never investigated or talked to plaintiff about the allegations.  Further, plaintiff's only meetings to discuss her suspension and termination occurred with Ms. Beying and Mr. Matthews.  Plaintiff offers no evidence that Ms. Pendleton participated with Ms. Beying or Mr. Matthews in the decision to terminate her.  The Court thus concludes that the question by Ms. Pendleton was a stray remark unrelated to the decisional process.

Plaintiff has not presented evidence to show that any other age-related remarks were made in relation to the decisionmaking process involved in her termination.  She has therefore not directly proved that age discrimination actually motivated her employer to terminate her employment.

## 2.  Indirect Proof of Discrimination

In the absence of direct proof of discrimination, courts assess age discrimination claims

---

[26]*Mitchell v. City of Wichita, Kan.*, 140 F. App'x 767, 778 (10th Cir. 2005) (quoting *Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000)).

under the *McDonnell Douglas* burden-shifting framework.[27]  Under the burden-shifting framework, the plaintiff must first establish a prima facie case of discrimination.[28]  If the plaintiff does so, the burdens shifts to the defendant to articulate a legitimate nondiscriminatory reason for its adverse employment decision.[29]  If the defendant meets this burden, the burden once again shifts back to the plaintiff, requiring that the plaintiff prove the defendant's proffered reason pretextual or "unworthy of belief."[30]

     **a.**     **Prima Facie Case**

Generally, to establish a prima facie case of age discrimination after termination, a plaintiff must prove (1) she is within the protected age group, (2) she satisfactorily performed her work, (3) the employer discharged her, and (4) the employer filled her position with a younger individual or treated her less favorably than younger employees.[31]  But at the prima facie stage, the plaintiff's burden is not onerous and only a small amount of proof is needed to create this inference of discrimination.[32]  The parties do not dispute that plaintiff was within the protected age group or that defendant discharged her from employment.  But parties dispute both that plaintiff satisfactorily performed her work and that defendant filled her position with a younger individual or treated her less favorably than younger employees.

---

[27]411 U.S. 792, 802 (1973).

[28]*Id.*

[29]*Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1533 (10th Cir. 1995).

[30]*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[31]*Kosak v. Catholic Health Initiatives of Colo.*, 400 F. App'x 363, 366 (10th Cir. 2010) (citing *Rivera v. City & Cnty of Denver*, 365 F.3d 912, 920 (10th Cir. 2004)).

[32]*Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *EEOC v. Flasher Co.*, 986 F.2d 1312, 1318 (10th Cir. 1992)).

The Court finds that plaintiff has created a genuine issue of material fact as to whether she satisfactorily performed her work.  Defendant claims that it fired plaintiff because it believed she admitted to giving medication over what was prescribed by a doctor and telling another nurse to do the same.  The Court, however, must be careful not to conflate plaintiff's claim of discrimination with defendant's proffered explanation for termination.[33]  When an employee's failure to perform her work satisfactorily is based on an employer-imposed criteria, which the employer uses as its legitimate nondiscriminatory reason to dispel an inference of discrimination, the employer cannot also use it to defeat the employee's prima facie case.[34]  Defendants have not offered any other evidence to show that plaintiff did not perform satisfactorily.  Further, the parties do not dispute that before any issue with nurse dosing arose, plaintiff had always received favorable performance reviews from her employer.  Thus, plaintiff has met her burden of showing a genuine issue of material fact on the second element of her prima facie case.

The Court finds that plaintiff has shown a genuine issue of material fact as to the last element of her prima facie case as well because plaintiff has offered evidence to show that she was replaced by a younger nurse.  Plaintiff offered evidence that someone younger replaced her by identifying the two nurses hired after her termination for her same position, both of which Ms. Pendleton estimated were younger than plaintiff.  Defendant claims that those two nurses, while hired for the same shift, did not replace plaintiff because not all of the night shift positions have been filled.  Defendant also claims that while Ms. Pendleton estimated that the nurses are younger than plaintiff, Ms. Pendleton is merely speculating.  Defendant's arguments, however, do no dispel the factual dispute over the new nurses' ages and whether they actually replaced

---

[33]*Orr*, 417 F.3d at 1149.

[34]*Id.* (citing *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000)).

plaintiff.  And while defendant may be able to disprove this element after a factual determination

at trial, plaintiff has offered enough evidence to show that a genuine issue exists.  Thus, the

plaintiff has met her burden of proving her prima facie case.[35]

### b.        Legitimate Nondiscriminatory Reason

Still, even though plaintiff has met her burden to establish a prima facie case of age

discrimination, defendant has advanced a legitimate nondiscriminatory reason for its decision to

terminate her, shifting the burden back to plaintiff.  Defendant explains that it terminated

plaintiff for nurse dosing, or administering more medication than prescribed.  Plaintiff has

admitted that a nurse she does not have authorization to administer more medication than a

physician prescribes and that doing so would justify termination of employment.  Thus,

defendant has offered a reason for termination that is legitimate and nondiscriminatory, and the

burden shifts back to the plaintiff to show pretext.

### c.        Pretext

When analyzing pretext, courts must determine

> "whether the employer's stated reasons were held in good faith at the time of the
> discharge, even if they later prove to be untrue, or whether plaintiff can show that
> the employer's explanation was so weak, implausible, inconsistent or incoherent
> that a reasonable fact finder could conclude that it was not an honestly held belief
> but rather was subterfuge for discrimination."[36]

To make this determination, courts must "'look at the facts as they appear to the person making

the decision to terminate.'"[37]  "A plaintiff typically makes a showing of pretext with evidence

---

[35]Because plaintiff met her prima facie case by presenting evidence that a younger nurse replaced her, the Court does not address her argument that defendant treated similarly situated, younger employees more favorably. Nonetheless, as explained below, plaintiff has not actually identified a similarly situated younger employee.

[36]*Simmons v. Sykes Enters., Ins*., 647 F.3d 943, 947 (10th Cir. 2011) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)).

[37]*Id.* at 948 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000)).

that: (1) the defendants stated reason for the adverse employment action is false, (2) defendant acted contrary to a written policy, or (3) defendant acted contrary to an unwritten policy or practice."[38]   A plaintiff, however, can also show pretext "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[39]

Here, plaintiff advances several arguments to prove defendant's proffered legitimate nondiscriminatory reason pretextual.  First, she states Ms. Pendleton's question about her retirement plan evidenced age discrimination.  Second, she states that the employer's reason for termination is false.  Third, plaintiff points to defendant's more favorable treatment of a younger employee.  Last, she highlights her employer's failure to fully investigate the allegations or to report her alleged wrongdoing to the Kansas State Board of Nursing.

Ms. Pendleton's question about plaintiff's retirement plan is insufficient to prove defendant's proffered reason for termination pretextual.  As discussed above, in a conversation with plaintiff, Ms. Pendleton asked plaintiff about her retirement plans.  This question, however, was a stray remark, isolated from plaintiff's termination.  Stray remarks and isolated or ambiguous comments, such as those asking about retirement plans, are too abstract to support a finding of pretext.[40]

Similarly, plaintiff's claim that the employer's stated reason for termination is false does

---

[38]*Kirkpartrick v. Pfizer, Inc.*, 391 F. App'x 712, 719 (10th Cir. 2010) (citing *Kendrick*, 220 F.3d at 1226).

[39]*Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1315 (10th Cir. 2006).

[40]*See Kirkpatrick*, 391 F. App'x at 720 (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 2000); *Ziegler v. Beverly Enters.-Minn., Inc.*, 133 F.3d 671, 676 n.3 (8th Cir. 1998) (finding question about retirement plans insufficient to prove pretext); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (same); *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992)).

not show pretext.  Any argument by plaintiff on whether she actually administered drugs above that prescribed or meant to admit to this conduct when meeting with Ms. Beying and Mr. Matthews fails to address the proper inquiry—whether her employer honestly believed in good faith that she had given medication above that prescribed and encouraged another nurse to do the same.  Plaintiff does not offer any proof that the employer knew that she only admitted to range dosing.  It is uncontroverted that defendant's investigation into plaintiff's conduct began after Ms. Asherman reported that plaintiff told her to nurse dose, which Ms. Asherman understood to mean giving more medication than was prescribed.  When Ms. Beying and Mr. Matthews asked plaintiff if she had told Ms. Asherman to nurse dose or had nurse dosed on other occasions, plaintiff said that she had.  Plaintiff never clarified her actions or questioned her supervisors on their definition of nurse dosing despite her employer's decision to suspend her and then fire her for nurse dosing.  Plaintiff offers no evidence, besides her own subjective understanding of nurse dosing, that her employer knew nurse dosing to mean something other than administering medicine above that prescribed.  Thus, plaintiff's claim that she did not actually nurse dose does not create pretext.

Next, plaintiff's evidence that defendant treated her less favorably than a younger, similarly situated employee is insufficient to establish pretext.  Evidence that similarly situated employees received different treatment than the plaintiff is indicative of pretext, but not all employees are similarly situated.[41]  Employees are not similarly situated when they have "not violated workplace rules of comparable seriousness."[42]  Plaintiff points to Ms. Forbach who she

---

[41]*Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007) (citing *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007); *Kendrick*, 220 F.3d at 1230).

[42]*Id.* (citing *Timmerman*, 483 F.3d at 1121).

claims received more favorable treatment after a similar incident.  But Ms. Forbach cannot be

compared as similarly situated because she did not violate a workplace rule of comparable

seriousness.  Plaintiff only provides evidence that Ms. Forbach *accidentally* administered more

medication than prescribed.  Defendant fired plaintiff for *purposefully* administering more

medication than prescribed.  Purposefully administering more medication than prescribed is not

a violation of comparable seriousness as accidentally overmedicating.  Thus, defendant's more

favorable treatment of Ms. Forbach does not show pretext because Ms. Forbach is not similarly

situated.

Lastly, defendant's failure to fully investigate or to report plaintiff's nurse dosing to the

Kansas State Board of Nursing does not prove that defendant's proffered reason for termination

is pretextual.  After Ms. Beying and Mr. Matthews told plaintiff of Ms. Asherman's allegations,

plaintiff admitted to nurse dosing.  They had no reason to believe that Ms. Asherman and

plaintiff had different understandings of nurse dosing.  Thus, after plaintiff admitted to nurse

dosing, the employer had no reason to investigate further the truth of Ms. Asherman's

allegations.  So lack of additional investigation does not prove any pretext.  Further,

defendant's failure to report the nurse dosing to the Kansas Board of Nursing does not prove

pretext.  Plaintiff has offered no evidence of a policy, written or unwritten, to suggest defendant

would usually report such actions.  While reporting may have been advisable, the Court does

"'not act as super personnel department that second guesses employer's business judgment.'"[43]

Defendant's failure to report the nurse dosing does not make defendant's explanation for

termination "'so weak, implausible, inconsistent or incoherent that a reasonable fact finder could

---

[43]*Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999)).

conclude that it was not an honestly held belief but rather was subterfuge for discrimination.'"[44]

Thus, plaintiff has failed to establish defendant's proffered legitimate nondiscriminatory reason

for termination as pretextual.

In sum, plaintiff's indirect, circumstantial evidence does not establish a genuine issue of

material fact about pretext in defendant's proffered reasons for termination.  As a result,

defendant is entitled to summary judgment on plaintiff's ADEA and KADEA claims.

### B.      FMLA Interference Claim

Under the FMLA, an employee is entitled to take up to twelve weeks of leave for "a

serious health condition that makes the employee unable to perform the functions of the position

of such employee."[45]  To protect this right, the FMLA prohibits interference with the exercise of

the employee's right to take leave.[46]  Under the interference theory, plaintiff has the burden to

show entitlement to FMLA leave but need not show the employer's intent to interfere with

FMLA leave.[47]  If an employer interferes with an employee's FMLA-created right to medical

leave, it has violated the FMLA, regardless of its intent.[48]  To prevail on an interference claim,

plaintiff must show that she was entitled to FMLA leave and that some an adverse action by her

---

[44]*See Simmons v. Sykes Enters., Ins*., 647 F.3d 943, 947 (10th Cir. 2011) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)).

[45]29 U.S.C. § 2612(a).

[46]*Id.* § 2615(a).

[47]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877–78 (10th Cir. 2004) (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 298, 961 (10th Cir. 2002)).

[48]*Id.*  Plaintiff suggests that if she does not have direct evidence to prove her prima facie case of FMLA interference, the Court should use the *McDonnell Douglas* burden-shifting framework.  Plaintiff misstates the standard for determining whether a genuine issue of fact exists for her FMLA interference claim.  If defendant interfered with plaintiff's FMLA rights, it does not matter whether defendant has a legitimate nondiscriminatory reason for interference because intent is not required to show interference.  So if she can establish that a genuine issue of material fact exists to show interference with her FMLA rights, she survives summary judgment regardless of defendant's reasons.

employer interfered with her right to take FMLA leave.[49]

Plaintiff has established that she was entitled to FMLA leave.  Plaintiff states that she was entitled to FMLA leave because she was on approved leave when her supervisor's called her and requested that she return to work.  Defendant states that plaintiff was no longer entitled to FMLA leave once she had obtained her release to return to work.  Plaintiff, however, does not claim interference after she obtained her release; she claims that the interference occurred when her supervisors contacted her during her leave.  Defendant does not dispute that before obtaining her release, plaintiff was entitled to FMLA leave.  Thus, plaintiff has met the first element of her prima facie case.

Plaintiff, however, has not established that an adverse action by her employer interfered with her FMLA leave.  The only interference that plaintiff claims is that her supervisor and co-worker contacted her during her FMLA leave to request that she return to work.[50]  The regulations promulgated under the FMLA, however, contemplate contact between an employer and an employee during FMLA leave.  During leave, circumstances may change and the amount of leave originally anticipated may become unnecessary.[51]  As such, an employer may contact an employee who is on FMLA leave and require that employee "to report periodically on the employee's status and intent to return to work."[52]  An employer, however, cannot pressure an

---

[49]*See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (quoting *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005)); *see also Bones*, 366 F.3d at 877.

[50]While plaintiff makes a brief reference in her Reply to the fact that defendant terminated her shortly after she returned from FMLA leave, she has stated that the only adverse action she claims is that her co-worker and supervisor called her while she was on leave.  She has also stated that she does not claim any interference after she returned to work.  Thus, the Court will not consider the termination as an adverse action.

[51]29 C.F.R. § 825.311(c).

[52]*Id.* § 825.311(a).

employee to reduce her leave time, thus discouraging her from using the FMLA leave.[53]  Such conduct would amount to interference with the employee's FMLA rights.

Here, the uncontroverted facts establish that plaintiff's supervisor did not pressure plaintiff into reducing her leave time.  Ms. Pendleton contacted plaintiff during her FMLA leave to assess plaintiff's condition and request that she return to work.  Ms. Pendleton told plaintiff that she would be only be required to assist Ms. Asherman and would not be required to do full floor work.  Plaintiff agreed to return.  Ms. Pendleton told plaintiff that she could only return if she obtained a full medical release.  While plaintiff claims that she only agreed to come back to work if she would not be required to do any floor duty, she does not make any claim that she feared retribution or that she was at risk of losing her job if she did not come back to work at that time.  Plaintiff voluntarily agreed to obtain a release from her doctor, she secured a release without restriction, and she voluntarily came back to work.  Ms. Pendleton's request did not pressure plaintiff to come back to work if she was not able or to reduce her FMLA leave, and so defendant did not discourage or interfere with plaintiff's leave when its employees called plaintiff about returning to work.  Therefore, plaintiff has not made the required showing to defeat summary judgment on her FMLA interference claim, and defendant is entitled to summary judgment on the FMLA interference claim.

## IV.    Conclusion

Defendant is entitled to summary judgment on all of plaintiff's claims.  While plaintiff has established the prima facie case for her age discrimination claim, defendant has offered a legitimate nondiscriminatory reason for terminating plaintiff.  Plaintiff cannot establish that

---

[53]*Lui v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003).

defendant's reason was pretextual, and thus the Court must grant summary judgment to defendant on the age discrimination claims under ADEA and KADEA.  Plaintiff cannot establish the prima facie case on her FMLA interference claim because she has not come forward with evidence that defendant pressured her to reduce her FMLA leave or discouraged her from using her leave.  Thus, the Court must grant summary judgment to the defendant on plaintiff's FMLA interference claim.

  **IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 27) is **GRANTED**.

  **IT IS SO ORDERED**.

Dated: <u>October 14, 2011</u>

         S/ Julie A. Robinson
        JULIE A. ROBINSON
        UNITED STATES DISTRICT JUDGE